IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COLUMBIA

|  |  |
|---|---|
| COUNTRY VILLA EAST, L.P.<br>    d/b/a Country Villa East H.C.<br>    2415 South Western Avenue<br>    Los Angeles, CA 90018,<br><br>and<br><br>KIM-LOU INC.<br>    d/b/a Bell Convalescent Hosp.<br>    4900 East Florence Avenue<br>    Bell, CA 90201,<br><br>and<br><br>EBENEZER HOME OF TENNESSEE<br>    d/b/a Good Samaritan Health & Rehab<br>    500 Hickory Hollow Terrace<br>    Antioch, TN 37013,<br><br>and<br><br>COUNTRY VILLA IMPERIAL, L.L.C.<br>    d/b/a Country Villa Los Feliz H.C.<br>    3002 Rowena Avenue<br>    Los Angeles, CA 90039,<br><br>and<br><br>RRT Enterprises L.P.<br>    d/b/a Country Villa North H.C.<br>    3233 West Pico Boulevard<br>    Los Angeles, CA 90019<br><br>    d/b/a Country Villa South H.C.<br>    3515 Overland Avenue<br>    Los Angeles, CA 90034<br><br>    d/b/a Country Villa Wilshire H.C.<br>    855 North Fairfax Avenue<br>    Los Angeles, CA 90046, | Civil Action No. _____<br><br><br><br>COMPLAINT |

and                                                            )
                                                               )
COUNTRY VILLA PLAZA, A CA.                                     )
LIMITED PARTNERSHIP                                            )
    d/b/a Country Villa Plaza H.C.         )
    1209 Hemlock Way                       )
    Santa Ana, CA  92707,                  )
                                                               )
and                                                            )
                                                               )
COUNTRY VILLA NURSING CENTER, INC.                             )
    d/b/a Country Villa Rehabilitation     )
    Center                                 )
    340 South Alvarado Street              )
    Los Angeles, CA  90057,                )
                                                               )
and                                                            )
                                                               )
COUNTRY VILLA EAST, L.P.                                       )
    d/b/a Country Villa Sheraton, H.C.     )
    9655 Sepulveda Boulevard               )
    North Hills, CA  91343                 )
                                                               )
    d/b/a Country Villa Terrace H.C.       )
    6070 West Pico Boulevard               )
    Los Angeles, CA  90035,                )
                                                               )
and                                                            )
                                                               )
COUNTRY VILLA WESTWOOD, A CA.                                  )
LIMITED PARTNERSHIP                                            )
    d/b/a Country Villa Westwood H.C.      )
    12121 Santa Monica Boulevard           )
    Los Angeles, CA  90025,                )
                                                               )
                Plaintiffs,   )
    v.                                     )
                                                               )
MICHAEL O. LEAVITT, in his capacity as                         )
    Secretary of the U.S. Department of    )
    Health and Human Services,             )
    200 Independence Ave., SW              )
    Washington, DC 20201,                  )
                                                               )
                Defendant.    )
_____)

2

## COMPLAINT

Plaintiffs, by and through their undersigned counsel, bring this action against the Secretary of the United States Department of Health and Human Services (the "Secretary") for review, under the Social Security Act, 42 U.S.C. § 1395oo(f), of a final decision of the Provider Reimbursement Review Board ("PRRB").

### I.   INTRODUCTION

1. Plaintiffs are licensed, skilled nursing facilities that serve as providers of medical services under the Medicare Program, 42 U.S.C. § 1395 *et seq.*

2. Plaintiffs bring this action for judicial review of the final decision of the PRRB that it lacked jurisdiction over Plaintiffs' administrative appeal. *See Re: Country Villa 94-97 Payroll Tax Allocation*, Provider Nos.-Various, Case No. 00-0791G (FYE-1994-1997) (June 7, 2006) (copy of decision attached as Exhibit A).

### II.   JURISDICTION AND VENUE

3. This action arises under the Social Security Act, 42 U.S.C. § 1395 *et seq.*

4. This Court has jurisdiction under 42 U.S.C. § 1395oo(f).

5. Venue lies in this judicial district pursuant to 42 U.S.C. § 1395oo(f)(1).

### III.   PARTIES

6. Plaintiffs, directly or through wholly-owned subsidiaries, management contracts, lease agreements or joint ventures, operate skilled nursing facilities ("SNFs"). The list of provider Plaintiffs is included in the caption of this Complaint.

7. Defendant, Michael O. Leavitt, is the Secretary of the U.S. Department of Health and Human Services, the federal agency responsible for the administration of the

Medicare program. The Medicare Program is administered by the Centers for Medicare and Medicaid Services ("CMS"), formerly known during times relevant to this action as the Health Care Financing Administration ("HCFA).

### IV. GENERAL STATUTORY AND REGULATORY BACKGROUND

8. At all times relevant to the matters at issue in this action, the Medicare program, established under Title XVIII of the Social Security Act, reimbursed SNFs for their reasonable costs incurred in furnishing Medicare-covered services to Medicare beneficiaries. *See* 42 U.S.C. § 1395x(v)(1).[1]

9. The Secretary administers the Medicare Program through contracts with fiscal agents, known as Medicare fiscal intermediaries. *See* 42 U.S.C. § 1395h. The Medicare fiscal intermediary that serviced Plaintiffs with respect to the cost reports at issue in this action is the Mutual of Omaha Insurance Company ("Mutual").

10. Among the statutory duties of a Medicare fiscal intermediary is that it "serve as a center for, and communicate to providers, any information or instructions furnished to it by the Secretary . . . ." 42 U.S.C. § 1395h(a)(2).

11. The reasonable cost reimbursement methodology applicable to this action provided for periodic interim payments to certified Medicare providers on an interim basis during each fiscal period. *See* 42 U.S.C. § 1395g.

---

[1] The reasonable cost methodology of reimbursing SNFs has been superseded by the Medicare prospective payment system.

4

12. After the close of each provider's fiscal period, the provider was required to submit to a Medicare fiscal intermediary an annual Medicare cost report, which was designed to identify the costs of healthcare services rendered for that period.

13. Upon receipt and review of a provider's cost report, the Medicare fiscal intermediary audited the cost report and issued a final determination of the allowable Medicare reimbursement, including any underpayment or overpayment made to the provider, in the form of a written Notice of Amount of Program Reimbursement ("NPR"). *See* 42 C.F.R. § 405.1803.

14. A provider or, where appropriate, a group of providers with a common issue that is dissatisfied with a Medicare fiscal intermediary's determination of reasonable costs may appeal the final determination of total Medicare program reimbursement to the PRRB. *See* 42 U.S.C. § 1395oo(a); 42 C.F.R. §§ 405.1835, 405.1837; *see also* 42 C.F.R. § 405.1807.

15. The Social Security Act empowers the PRRB "to affirm, modify or reverse a final determination of the fiscal intermediary with respect to a cost report and to make any other revisions on matters covered by such cost report (including revisions adverse to the provider of services) even though such matters were not considered by the Intermediary in making such final determination." 42 U.S.C. § 1395oo(d).

16. A decision of the PRRB, which is required by law to be supported by substantial evidence when the record is viewed as a whole, is final and binding unless the Secretary reverses, affirms, or modifies the decision within 60 days of the provider's receipt of the decision. *See* 42 U.S.C. §§ 1395oo(d), 1395oo(f)(1).

17.  A provider or, where appropriate, a group of providers may appeal the final decision of the PRRB by filing a civil action in federal district court within 60 days of receipt of notice either of a final decision by the PRRB or a reversal, affirmation or modification of that decision by the Secretary, acting through the Administrator of CMS. *See* 42 U.S.C. § 1395oo(f)(1).

## V.    FACTS

18.  The cost periods relevant to this action include fiscal years ending ("FYEs") in 1994, 1995, 1996, and 1997.

19.  At all times relevant to this action, Plaintiffs received Medicare reimbursement under the reasonable cost methodology.

20.  Plaintiffs incurred costs and expenses in FYEs 1994, 1995, 1996 and 1997 related to, among other things: (i) workers' compensation insurance; (ii) Federal unemployment tax ("FUTA"); (iii) state unemployment tax ("SUTA"); and (iv) Federal Insurance Contribution Act taxes ("FICA").  CMS has referred to these four costs collectively as "payroll-related tax costs."

21.  All Plaintiffs included their payroll-related tax costs, in full, on their filed cost reports for one or more of FYEs 1994, 1995, 1996 and 1997.  With respect to the cost reports at issue in this case, Plaintiffs allocated all of these costs as Health and Welfare ("H&W") costs, rather than as Administrative and General ("A&G") costs.  As a result, Medicare reimbursed Plaintiffs for a smaller proportion of these payroll-related tax costs than it would have if such costs had instead been allocated as A&G costs.

22.  The central underlying issue in this case is whether Plaintiffs' payroll-related tax costs properly could have been allocated to the A&G cost center by Plaintiffs

or whether they were instead required to be allocated to the cost center associated with employee fringe benefits, *i.e.*, the H&W Cost Center.

23. Neither the Medicare statute nor the regulations promulgated under that statute specify whether payroll-related tax costs should be treated as a provider's employee benefits cost and allocated to its H&W cost center or whether they should instead be treated as overhead expenses and allocated to the A&G cost center.

24. Mutual, however, had historically required Plaintiffs to allocate all payroll-related tax costs to the H&W cost center because it considered these costs to be employee benefits, rather than overhead expenses.

25. Given Mutual's historic requirement that all payroll-related tax costs be reported in this manner, it would have been futile for Plaintiffs to submit a claim for cost reimbursement in a manner considered improper by Mutual, and the PRRB therefore has jurisdiction to hear this group appeal. Indeed, the Secretary has already conceded that this is true on multiple occasions by virtue of the stipulated orders agreed to by the Secretary and entered by this Court in other cases involving this identical issue. *See Genesis Health Ventures of Naugatuck, Inc. v. Thompson*, Case No. 02-00745 (RMU), Doc. No. 22 (Feb. 14, 2003); *Pleasant Care Corporation v. Thompson*, Case No. 02-1785 (JB), Doc. No. 11 (Feb. 14, 2003).

26. In compliance with Mutual's historical requirements regarding reporting of payroll-tax related costs, Plaintiffs completed the cost reports at issue in this action in a manner consistent with Mutual's historic requirement for treatment of all payroll-related tax costs by allocating all such costs to the H&W cost center.

27. Plaintiffs timely filed all relevant cost reports for FYEs 1994, 1995, 1996 and 1997, as required by 42 C.F.R. § 413.24(f)(2).

28. Unbeknownst to Plaintiffs at the time, on or about April 14, 1998, another Medicare fiscal intermediary, Veritus Medicare Services ("Veritus"), which is affiliated with Blue Cross Blue Shield Association, requested information from the HCFA (now CMS) Central Office in Baltimore ("CMS Central") about the proper method for allocating payroll-related tax costs on cost reports.

29. Unbeknownst to Plaintiffs at the time, on or about May 5, 1998, CMS Central responded to that inquiry with interpretative guidance in the form of a letter (the "5/5/98 CMS Central Letter"). In particular, the 5/5/98 CMS Central Letter communicated the following instructions:

> Worker's compensation and other employment-related taxes (employer's share of FICA, unemployment compensation) are not fringe (employee) benefits; rather, they are administrative business costs of the provider. Accordingly, *these costs are generally included in the provider's administrative and general cost center* . . . .

(Letter from Bruce R. Oliver to Rebecca S. Shirey received on May 5, 1998) (emphasis added) (copy at Exhibit B).

30. Unbeknownst to Plaintiffs at the time, in follow-up correspondence sent on June 15, 1998, that same Medicare fiscal intermediary contacted CMS Central to confirm the instructions communicated by the 5/5/98 CMS Central letter.

31. Unbeknownst to Plaintiffs at the time, on or about July 6, 1998, CMS Central responded in writing (the "7/6/98 CMS Central Letter") and confirmed the

instructions communicated by its earlier 5/5/98 CMS Central Letter. In particular, the 7/6/98 CMS Central Letter stated as follows:

> Payroll-related taxes such as workers compensation, unemployment compensation and F.I.C.A. (employer's share) *are not considered fringe benefits* because they are not amounts paid to, or on behalf of, an employee in addition to direct salary or wages (see PRM Section 2144.1). Rather, these costs are considered payroll-related tax costs.

(Letter from Bruce R. Oliver to Richard C. Rinschler dated July 6, 1998) (emphasis added) (copy at Exhibit C).

32. The 7/6/98 CMS Central Letter further instructed that "providers may include these costs in the A&G cost center for allocation purposes" and also advised that CMS Central had "no plans to limit the flexibility that providers have in reporting these costs." (*Id.*).

33. Unbeknownst to Plaintiffs at the time, in testimony given before the PRRB on March 26, 2004, in an unrelated case involving the identical issue of the proper reporting of payroll-related tax costs, *In the Matter of Mutual of Omaha vs. Pleasant Care Corp.,* Case No. 00-0909G, a Mutual representative testified that, after being made aware of the CMS Central Letters quoted above, and in reliance upon them, Mutual reopened cost reports to allow the providers in that case to reclassify their payroll-related tax costs, including FICA, from H&W to A&G and then reimbursed those providers for the additional amounts they were due as a result of the reclassification of such costs.

34. Mutual was, therefore, obligated to provide Plaintiffs with notice of the instructions on the proper method for reporting payroll-related tax costs as set forth in the

5/5/98 CMS Central Letter and the 7/6/98 CMS Central Letter. *See* 42 U.S.C. § 1395h(a)(2)(A).

35.   Mutual, however, never provided any notice to Plaintiffs regarding the instructions and interpretive guidance communicated by the two CMS Central Letters that payroll-related tax costs could properly be allocated on providers' cost reports as A&G costs.

36.   Mutual issued NPRs to Plaintiffs for the relevant cost reports for FYEs 1994, 1995, 1996 and 1997 beginning on August 5, 1996, and continuing to September 24, 1999.

37.   Notwithstanding the instructions issued by CMS Central on the proper allocation of payroll-related tax costs on cost reports, Mutual did not adjust the allocation methodology used by Plaintiffs to report their payroll-related tax costs nor inform Plaintiffs that they could reclassify their payroll-related tax costs from H&W to A&G. Rather, Mutual simply continued to process Plaintiffs cost reports, and to compute the reimbursement amounts due Plaintiffs, while treating all payroll-related tax costs as H&W costs.

38.   On April 6, 1999, the PRRB issued a seminal decision regarding certain payroll-related tax costs in appeals filed by providers unrelated to Plaintiffs. *See Longwood Management Corporation 94-95 Workers Comp. Group*, PRRB Dec. 99-D34 (Apr. 6, 1999). In its *Longwood* decision, the PRRB rejected the position asserted by the intermediary in that case that all payroll-related tax costs should be allocated as H&W costs, and instead determined that the payroll-related tax costs there in issue should be allocated as A&G costs.

39. Despite the definitive PRRB decision in *Longwood* addressing the proper allocation of payroll-related tax costs, Mutual continued to finalize Plaintiffs' cost reports while treating all payroll-related tax costs as H&W costs and continued to issue NPRs without any adjustment to Plaintiffs' reporting methodology used to report payroll-related tax costs.

40. The two CMS Central Letters were not in existence, and the PRRB decision cited above had not yet been issued, at the time Plaintiffs originally filed nearly all of the cost reports at issue. Accordingly, the cost allocation methodology utilized to complete the cost reports at issue here conformed with Mutual's historic (and, as we now know, erroneous) requirement that all payroll-related tax costs be allocated as H&W costs, and not with the CMS instructions communicated by the two CMS Central Letters which instruct that providers may properly allocate all such costs as A&G costs.

41. On September 6 and 26, 2000, the PRRB issued two additional decisions relating to payroll-related tax costs in cases stemming from appeals filed by providers unrelated to Plaintiffs. *See Seniors Management 95 Workers Comp. Group*, PRRB Dec. 2000-D79 (Sept. 6, 2000); *Extendicare 1996 Insurance Allocation Group*, PRRB Dec. 2000-D88 (Sept. 26, 2000). In each of these decisions, the PRRB again rejected the position that all payroll-related tax costs must be allocated on cost reports as H&W costs.

42. The two CMS Central Letters, along with the *Longwood*, *Seniors Management* and *Extendicare* decisions, confirm that Mutual finalized Plaintiffs' cost reports and issued NPRs to Plaintiffs in a manner and with a result that is contrary to Medicare policy, as evidenced by the specific instructions and interpretive guidance communicated in the CMS Central Letters.

43. As a result of Mutual's failure to reallocate the payroll-related tax costs from H&W to A&G in its final determinations, or to reopen the cost reports to permit reclassification of the payroll-related tax costs from H&W to A&G at Plaintiffs' request, Plaintiffs were reimbursed for a smaller portion of their payroll-related tax costs than they were entitled to under Medicare policy as expressed in the two CMS Central Letters and the PRRB decisions cited above. Accordingly, Plaintiffs are dissatisfied with Mutual's final determinations as to the total amount of program reimbursement for the relevant cost reports for FYEs 1994, 1995, 1996 and 1997.

## VI.  ADMINISTRATIVE PROCEEDINGS

44. Timely appeals were filed with the PRRB with respect to all cost reports at issue. The total amount in controversy for this group appeal, as that term is used in 42 U.S.C. § 1395oo(b), exceeded $50,000; Plaintiffs estimate that the total amount by which they have been underpaid is approximately $689,708.

45. On June 7, 2006, the PRRB ruled that it lacked jurisdiction over the group appeal for PRRB Case No. 00-0791G, and on or about July 20, 2006, the CMS Administrator declined to review that decision. Under 42 U.S.C. § 1395oo(f)(1) and 42 C.F.R. § 405.1877(9)(1), therefore, the PRRB's decision is a final decision of the Secretary, and is therefore subject to judicial review through a civil action filed in this Court within sixty days of Plaintiffs' receipt of notice of the PRRB's decision.

46. Plaintiffs first received notice of the PRRB's June 7, 2006 decision in Case No. 00-791G, by certified mail, on June 9, 2006.

47. The PRRB's decision that it lacked jurisdiction over this group appeal was unlawful and must be set aside because it was arbitrary, capricious, an abuse of discretion, and/or otherwise not in accordance with law.

### VII.  RELIEF REQUESTED

48. WHEREFORE, Plaintiffs request that this Court review the PRRB's June 7, 2006 decision in PRRB Case No. 00-0791G, vacate the PRRB's decision, and remand this case with instructions that the PRRB accept jurisdiction and permit Plaintiffs' appeal to be heard in a formal PRRB hearing. Plaintiffs further request that this Court grant them such other and further relief as this Court deems appropriate.

Respectfully submitted,

_____
Joseph Brooks
(D.C. Bar # 366739)
MORGAN, LEWIS & BOCKIUS, L.L.P.
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-3000
*Attorneys for Plaintiffs*

Dated: August 7, 2006